IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALI ABDUL HADI ALI RADHEYYAN,

              Petitioner,

     v.

JANET NAPOLITANO, Secretary,
Department of Homeland Security;
ALEJANDRO MAYORKAS, Director,
United States Citizenship and Immigration
Services; EVELYN SAHLI, Portland Field
Office Director, USCIS; ERIC HOLDER,
United States Attorney General; and UNITED
STATES CITIZENSHIP AND IMMIGRATION
SERVICES,

              Respondents.

No. 3:12-cv-00622-HZ

FINDINGS OF FACT &
CONCLUSIONS OF LAW

John J. Dooney, III
Nicole Hope Nelson
Philip James Smith
Nelson Smith LLP
208 SW First Avenue, Suite 360
Portland, OR 97204

     Attorneys for Petitioner

1 - FINDINGS OF FACT & CONCLUSIONS OF LAW

Christopher W. Dempsey
U.S. Department of Justice
P.O. Box 868
Ben Franklin Station
Washington, DC 20044

James E. Cox, Jr.
U.S. Attorney's Office
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204

       Attorneys for Respondents

HERNANDEZ, District Judge:

       Petitioner Ali Abdul Hadi Ali Radheyyan petitions this court for a de novo review of the denial of his application for naturalization under 8 U.S.C. § 1421(c). On November 20, 2012, the U.S. Citizenship and Immigration Services ("USCIS") issued a final decision to deny Petitioner's application for naturalization. The USCIS denied the application based on the grounds that Petitioner lacked good moral character and failed to demonstrate that he had been lawfully admitted for permanent residence.

       Petitioner may seek judicial review of the denial of his application for naturalization in district court. 8 U.S.C. § 1421(c). "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." Id. Petitioner did not request a hearing. The following are my findings of fact and conclusions of law.

## FINDINGS OF FACT

I.     Admission to the United States

       Petitioner was admitted to the United States on December 19, 1982 on a student visa. Admin. R. ("AR") 488. Petitioner completed his studies in June 1994, but remained in the

United States illegally. AR 755. After failing to appear at a deportation hearing on August 11, 1995, Petitioner was ordered deported in absentia that same day. AR 333, 566. A motion to reopen deportation proceedings was granted and the order of deportation in absentia was vacated. AR 564. A hearing before an immigration judge was scheduled for December 17, 1997. AR 439. At the hearing, the immigration judge conditionally granted a suspension of deportation for 180 days. AR 370. The suspension of deportation was granted on September 30, 1998, and Petitioner's status was adjusted to lawful permanent resident. AR 367-68, 288.

II.   Application for Naturalization

   A.   Procedural History

On August 2, 2007, Petitioner applied for naturalization. AR 38-47. Petitioner certified that the representations in his naturalization application were true under penalty of perjury. AR 47. On July 28, 2009, a USCIS officer interviewed Petitioner regarding his application. Supp. Admin. R. ("SAR") 449-496. On September 22, 2009, USCIS denied Petitioner's application because he failed to establish that he is a person of good moral character. AR 18. USCIS found that Petitioner lacked good moral character because (1) Petitioner had failed to state that he used other names, (2) Petitioner had incorrectly claimed only one marriage on all his immigration forms, and (3) Petitioner failed to admit that he had been involved in overseas transactions or wire transfers. AR 19-20.

Petitioner appealed the denial of his application for naturalization and requested a hearing. AR 2. On January 7, 2010, a USCIS officer interviewed Petitioner regarding the subject matter related to the denial of his application. SAR 497-535. While Petitioner's appeal was pending, the USCIS received derogatory information about Petitioner from the Federal

3 - FINDINGS OF FACT & CONCLUSIONS OF LAW

Bureau of Investigation ("FBI") on September 25, 2012. Another hearing was conducted on November 5, 2012 to allow Petitioner to rebut the derogatory information. SAR 242.

On November 20, 2012, USCIS affirmed the denial of Petitioner's application because Petitioner lacked good moral character. AR 2. USCIS cited to the following subject matter in which Petitioner's testimony was "evasive or unclear": (1) Petitioner's relationship with Hamid Reza Rabiee, an Iranian that U.S. persons are prohibited from interacting with, (2) Petitioner's relationship with Kristen Jawad, wife of Abed Jawad, who has been linked to Hamid Reza Rabiee, (3) Petitioner's first marriage to Jones, and (4) Petitioner's sources of income. AR 2-7.

Additionally, the USCIS affirmed the denial because Petitioner failed to demonstrate that he had been lawfully admitted for permanent residence. AR 8. At the time the suspension of deportation had been granted, USCIS believes the omission of Petitioner's first marriage could have affected the immigration judge's finding that Petitioner had the requisite good moral character. AR 10.

B.   Other Names

Variations of Petitioner's name include "Ali Abdulhadi Ali," "Ali Abdulhadi", and "Ali A. Ali." SAR 510-512. Regarding his failure to tell USCIS that he had used other versions of his name, Petitioner explained that he thought the different versions had already been documented in various paperwork submitted to the USCIS. SAR 516.

C.   Overseas Wire Transfers

Petitioner receives monthly wires transfers from his mother in Kuwait to help with family expenses. SAR 523-24. Petitioner incorrectly stated that he was not involved in any overseas transactions or wire transfers. Petitioner believed the question only referred to sending money overseas for business transactions. SAR 523, 526.

4 - FINDINGS OF FACT & CONCLUSIONS OF LAW

D.  First Marriage

On his application Petitioner had indicated that he had only married one time (AR 41); but during the July 28, 2009 interview, Petitioner admitted that he had been married twice (SAR 457). Petitioner's first marriage was to Juanita Denise Jones[1] on September 12, 1983. SAR 68. Petitioner testified that he wanted to get married because he believed that, as in Kuwait, he had to marry before he could be seen with a woman. SAR 339. After meeting Jones once, Petitioner decided to marry her the next day. SAR 391. There are multiple inconsistencies in Petitioner's testimony about his first marriage.

- Petitioner stated that he met Jones in a shop in downtown Seattle on First or Second Avenue. SAR 521. Later, Petitioner stated that a friend introduced Jones to him at a store on Broadway. SAR 345-46.

- Petitioner initially did not remember the name of the friend who introduced him to Jones (SAR 345-46), but later recalled his friend's name as "Jose" or "Omar" after being asked again. SAR 400.

- He denied having intercourse with Jones after getting married (SAR 389), but later admitted that they had intercourse for one night. SAR 430.

- When asked how much money he paid to Jones, Petitioner said "I don't know, just some kind of money[.]" SAR 354. When asked again, Petitioner said that he did not remember. SAR 355. Petitioner finally admitted that he paid $4000. SAR 403.

- When asked who Petitioner gave the money to, he stated Jones. Later he stated that he gave money to Omar to give to Jones. SAR 402.

- Petitioner initially testified that the marriage ended after two months. SAR 463. Petitioner later testified that the marriage lasted one week (SAR 389, 520), but then changed the testimony to one day (SAR 347).

- Petitioner testified that he went to an attorney's office in September 1983 to sign divorce papers. SAR 351. However, the petition for divorce shows that Petitioner signed the document on December 8, 1983. SAR 68-70.

---

[1] Jones took Petitioner's last name of "Ali" after they married and court documents refer to her as "Juanita Denise Ali". SAR 68.

5 - FINDINGS OF FACT & CONCLUSIONS OF LAW

USCIS obtained a sworn statement from Jones[2], signed under the penalty of perjury. SAR 252-56. Her account of the first marriage differs from Petitioner's in the following instances.

- Jones said that she and Petitioner met at the Islamic Center in Seattle and that she was introduced to him by a man named Omar. SAR 254. Jones knew Petitioner by the name of Ali Ali. SAR 255.

- Jones said that she knew Petitioner for a couple of months before they decided to get married. SAR 254.

- Jones admitted that her marriage to Petitioner was a fraud. SAR 255. Omar told her that Petitioner needed a green card and was willing to pay for it. SAR 255.

- Jones said that Petitioner paid her $15,000 to get married and paid Omar another $15,000 for arranging the marriage. SAR 255. Jones received the $15,000 in cash a few days before the marriage. SAR 255.

The investigator did not observe signs indicating that Jones was not credible or being dishonest. SAR 256. At the time Jones agreed to the marriage, she had kids, no place to live, and no money. SAR 278. She used the money from Petitioner to find a place to live and to buy food. SAR 278. Jones explained that she was willing to admit to a potential crime because she is "trying to be a good role model for my grandchildren." SAR 256.

Petitioner eventually obtained a general judgment of dissolution of marriage from Jones in December 2009. SAR 257-58. Petitioner entered into a second marriage in August 1984 (SAR 334), which meant that Petitioner was still married to Jones at the time of his second marriage.

Petitioner testified that he did not mention that he had been married before because it lasted only a week (SAR 519), he had forgotten Jones's name (SAR 528), and he had forgotten the date they married (SAR 529). However, the question on the immigration documents asks for

---

[2] Jones changed her name to Aishah Musawwir on February 21, 1985, but I will continue to refer to her as "Jones" for the sake of clarity. SAR 253.

6 - FINDINGS OF FACT & CONCLUSIONS OF LAW

the number of times Petitioner has been married. Petitioner admitted that he did not forget that he had been married before. SAR 529.

  E.  Association with Hamid Rabiee

On July 12, 2012, the U.S. Treasury Department Office of Public Affairs released a fact sheet regarding increased sanctions against Iran. SAR 22. Hamid Rabiee was designated as an individual that "U.S. persons are generally prohibited from engaging in any transactions with…and any assets the designees may have under U.S. jurisdiction are blocked." SAR 22-23. Rabiee was the president of PortNet Multimedia from 1998 to 2002. SAR 42. PortNet is associated with a company called CISCOM. SAR 15.

Petitioner was asked whether he had heard of PortNet. SAR 358. He answered "no." SAR 358. After he was reminded that it was important to be honest, Petitioner changed his answer and said that he had heard of the company. SAR 258. Petitioner knew two men at PortNet, Abed and Rabiee. SAR 360. Petitioner and Rabiee had both worked at Intel at the same time. SAR 359. Petitioner criticized Rabiee's work at Intel and repeatedly said he did not like Rabiee. SAR 359, 361. Petitioner stated that he went to PortNet's office twice to visit his friend Abed. SAR 364, 366. Petitioner stated that he did not work for Rabiee at PortNet. SAR 417.

In 1997 or 1998, Petitioner loaned Rabiee $600, but he did not know what Rabiee did with the money. SAR 432, 433. When asked why he lent the money, Petitioner stated that Rabiee was a friend. SAR 432. Petitioner later added that Rabiee had promised a good return on the money. SAR 435. Petitioner stated that Rabiee never returned the $600 to him. SAR 433. Petitioner said his last contact with Rabiee was in 1998. SAR 359, 420.

7 - FINDINGS OF FACT & CONCLUSIONS OF LAW

Evidence gathered by the FBI shows that Petitioner sent Rabiee an email in October 2000. SAR 6. The email described an "Internet satellite business" opportunity between Rabiee and Petitioner. Id. Petitioner wrote that he had received a call that money from the National Bank of Kuwait was ready. Id. Petitioner encouraged Rabiee to act quickly and described the opportunity as "our lifetime chance". Id. When confronted with the email, Petitioner did not understand why the business opportunity had any importance because it would have been established in Kuwait, not in the U.S. SAR 437.

When asked about the work he did for CISCOM, Petitioner stated that he did not know CISCOM. SAR 373. However, Petitioner received a $400 check from CISCOM in 2001. SAR 9. Petitioner explained that the $400 was repayment for the $600 that he had lent Rabiee. SAR 439. Petitioner's credit report show that he was employed by "Syscom" (SAR 7), but Petitioner denies ever having worked for CISCOM (SAR 440).

## CONCLUSIONS OF LAW

I.      Legal Standards

In order to be naturalized, an applicant bears the burden of establishing each of the statutory requirements by a preponderance of the evidence. United States v. Hovsepian (Hovespian I), 359 F.3d 1144, 1168 (9th Cir. 2004) (citing 8 C.F.R. § 316.2(b)). To establish eligibility for naturalization, an applicant must meet the requirements set forth in 8 U.S.C. § 1427(a). Of the requirements in § 1427(a), Defendant argues that Petitioner has not established that he was a person of good moral character, nor has he shown that he was had been lawfully admitted for permanent residence. Def.'s Resp. 28.

The issue of whether an applicant possesses good moral character is a factual determination. United States v. Hovsepian (Hovsepian II), 422 F.3d 883, 885 (9th Cir. 2005).

Although the Immigration and Naturalization Act does not define "good moral character," it lists nine circumstances which preclude such a finding. 8 U.S.C. § 1101(f). In particular, "one who has given false testimony for the purpose of obtaining any benefits under this Act" cannot be found to have the good moral character. 8 U.S.C. § 1101(f)(6). The Supreme Court has interpreted § 1101(f)(6) to lack a materiality element. Kungys v. United States, 485 U.S. 759, 779 (1988). In other words, § 1106(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." Id. at 779-80. Thus, the focus is on the applicant's intent to deceive when giving false statements, rather than on the materiality of the false statements. Id. at 780.

"Testimony" for purposes of 8 U.S.C. § 1101(f)(6) must be oral statements made under oath; "it does not include other types of misrepresentations or concealments, such as falsified documents or statements not made under oath." Id. at 780. "[Section] 1101(f)(6) applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits." Id. "Whether a person has the subjective intent to deceive in order to obtain immigration benefits is a question of fact." Hovsepian II, 422 F.3d at 887-88 (citing Kungys, 485 U.S. at 782).

II.     Petitioner's Testimony

Petitioner answered the questions on his naturalization application under the penalty of perjury. Petitioner also gave sworn testimony before USCIS officers on July 28, 2009, January 7, 2010, and November 5, 2012.

   A.     First Marriage

Petitioner falsely stated that he had only been married once on his naturalization application. Petitioner explained that he made the false statement because he could not

9 - FINDINGS OF FACT & CONCLUSIONS OF LAW

remember Jones's name or when they married.  Petitioner's explanation is not credible.  The question asked for the number of marriages.  None of the reasons proffered by Petitioner explain away the misrepresentation.  In fact, Petitioner admitted that he had not forgotten that he had been married twice.  I conclude that Petitioner gave false testimony during interviews with USCIS officers in an attempt to hide the circumstances surrounding his first marriage.

Even after admitting that he had falsely answered the question on his naturalization application, there are multiple inconsistencies throughout Petitioner's sworn testimony before the USCIS officers on January 7, 2010 and November 5, 2012.  The inconsistencies concerned how he met Jones, the amount of money he paid to Jones, and the duration of his marriage.  Additionally, in light of Jones's statement, Petitioner's reason for the marriage (because he was lonely) is not credible.  In his reply brief, Petitioner does not offer an explanation for giving false testimony about his first marriage.  Petitioner's misrepresentations that he had been married only once and the inconsistencies in his testimony regarding his first marriage lead me to conclude that Petitioner gave false testimony with the intent to deceive the USCIS to obtain immigration benefits.

B.    Relationship to Hamid Rabiee

Petitioner was evasive about his relationship with Rabiee and his testimony contained several inconsistencies.  Petitioner falsely denied that he knew about PortNet, Rabiee's company, and only revealed otherwise after being reminded that he needed to tell the truth.  Additionally, despite repeatedly stating that he did not like Rabiee, Petitioner admitted that he loaned Rabiee $600 because he was a "friend."  Petitioner later admitted that Rabiee had promised a good return on the $600.  Petitioner also falsely testified that his last contact with Rabiee was in 1998.  Petitioner owned up to the false testimony only after he was presented with the October 2000

email regarding the "lifetime chance" business opportunity in Kuwait. I conclude that Petitioner gave false testimony regarding his relationship with Rabiee with the intent to deceive the USCIS to obtain immigration benefits.

III.     Lawful Admission for Permanent Residence

Defendant argues that Petitioner has not met his burden to show that he was lawfully admitted for permanent residence, another requirement of naturalization. 8 U.S.C. § 1427(a)(1). In light of my conclusion that Petitioner gave false testimony, and thus lacks good moral character as required by 8 U.S.C. § 1427(a)(3), I need not address this argument.

## CONCLUSION

Based on the foregoing, I conclude that Petitioner lacks good moral character because he gave false testimony for the purpose of obtaining immigration benefits. Petitioner has not met the requirements for naturalization under 8 U.S.C. § 1427(a), and therefore, the petition is denied.

IT IS SO ORDERED.

Dated this 29 day of August, 2013.

                                                                          _____
                                                                          MARCO A. HERNANDEZ
                                                                          United States District Judge